**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                                       Case No. 09-20221

                                                     HONORABLE DENISE PAGE HOOD

ROSA GENAO (D-9) and JUAN DE OLEO (D-8),

    Defendants.

    _____/

## ORDER AND OPINION REGARDING REQUEST TO SUPPRESS STATEMENT AND MOTION TO ADOPT CO-DEFENDANT'S REQUEST TO SUPPRESS

**I.    INTRODUCTION**

Before the Court is Defendant Rosa Genao's Request to Suppress Her September 8, 2009 Pre-Indictment Statement(s) to the Government, filed on November 16, 2009. Also before the Court is Defendant Juan De Oleo's Motion to Adopt Co-Defendant Genao's Request to Suppress Pre-Indictment Statement(s), filed on November 17, 2009. On November 24, 2009, the Government filed a Response to Defendants' Requests to Suppress their Pre-Indictment Statement(s) to the Government. A hearing was held on February 12, 2010.[1] At the February 12, 2010 hearing, the

---

[1] On February 5, 2010, the Government filed a Motion to Quash Subpoenas and to Limit Testimony at Hearing, If Any, to Whether the Government Coerced Defendants into Confessing. The Government sought to have three subpoenas issued by Defendants quashed and to limit the testimony at the February 12, 2010 hearing to only address the issue relevant to Defendants' Motion to Suppress; whether the Government coerced them into confessing during their pre-indictment statements to the Government. On February 7, 2010, Defendants filed a Supplement to their Motion to Suppress and Response to the Government's Motion to Quash Subpoenas and Limit Testimony at Hearing. On February 10, 2010, this Court entered an Order quashing the three subpoenas served

Spanish language interpreter, Maria Donahue, believed that two interpreters were needed to ensure that no mistakes were made during the translation from English into Spanish and vice versa. The Court attempted to obtain another interpreter so that the proceeding could continue, however, none could be obtained on such short notice. The Court then adjourned the hearing to February 25, 2010.

## II. STATEMENT OF FACTS

Defendants Genao and De Oleo, husband and wife, are indicted in a Second Superseding Indictment, filed December 16, 2009. Defendant Genao, a resident of Florida and a physician licensed to practice law in the State of Florida, is charged with health care fraud conspiracy in violation of 18 U.S.C. § 1349 (Count 1), health care fraud in violation of 18 U.S.C. §§ 1347 & 2 (Counts 2 through 6), and destruction and alteration of records to impede a federal investigation in violation of 18 U.S.C. §§ 1519 & 2 (Count 9). Defendant De Oleo, a physician's assistant, is charged in the Second Superseding Indictment with health care fraud conspiracy in violation of 18 U.S.C. § 1349 (Count 1), money laundering in violation of 18 U.S.C. § 1957 (Counts 7 and 8), and health care fraud in violation of 18 U.S.C. §§ 1347 & 2 (Counts 2 through 6).[2]

Defendants argue that on August 18, 2009, Jose Rosario, a principal witness for the Government, who is also indicted in a companion case filed in this district, *see* case number 09-20200 (assigned to Chief Judge Gerald E. Rosen), entered a plea of guilty. It is Defendants'

upon Nelson Alfaro, Jose Rosario and David Fernandez.

---

[2] The Government has indicated that upon conviction Defendants shall forfeit any property, real or personal, that is derived from the gross proceeds traceable to the commission of the offenses listed in counts one through six of the Second Superseding Indictment. *See* Sec. Superseding Ind. at 17.

contention that once Mr. Rosario entered this plea, he became a cooperating Government witness. Defendants maintain that shortly after entry of his guilty plea, Mr. Rosario contacted Defendant De Oleo and urged he and his wife, Defendant Genao, to speak with Mr. Rosario's attorney, Nelson Alfaro, because Defendants De Oleo and Genao were targets of a continuing federal investigation surrounding the clinics operated by Rosario in Eastern Michigan.[3]

On or about July 13, 2009, it was arranged for Defendant De Oleo and Defendant Genao to meet with Mr. Alfaro. At Mr. Alfaro's urging, Defendants agreed to retain him as their attorney and paid him a substantial, non-refundable, retainer fee.[4] Defendants were never informed of the inherent conflict in representing them both, nor was their right to waive the conflict ever discussed. Further, Mr. Alfaro did not inform Defendants of the conflict created by his representation of Mr. Rosario, who Defendants allege is the lead co-conspirator who had already been indicted on similar charges in companion case number 09-20200. Defendants believe that at the time they entered into an agreement with Mr. Alfaro, Mr. Rosario was already a cooperating witness for the Government.

According to Defendants, Mr. Alfaro, or someone at his direction, arranged for Defendants to be interviewed by the Government in September of 2009. Days before the scheduled debriefing, Mr. Alfaro contacted Defendants and arranged to have attorney David Fernandez stand in for him.[5]

---

[3] The Second Superseding Indictment in the present matter does not indicate that Mr. Rosario operated the clinic that is the subject of this matter, Xpress Center, Inc.; rather it is silent as to the individual who operated Xpress Center, Inc.

[4] The retainer fee was $30,000.00, of which Defendants paid $10,000.00 up front prior to the commencement of any work performed by Mr. Alfaro, as agreed to in the retainer agreement.

[5] Defendants maintain that they never retained Mr. Fernandez and that he was thrust upon them by Mr. Alfaro. Conversely, the Government asserts that Mr. Fernandez was their retained attorney.

Mr. Fernandez met with Defendant Genao once before she met with the Government in Miami, Florida.

On September 8, 2009, three weeks prior to the return of the First Superseding Indictment in which she was named, Defendant Genao met with representatives of the Government at the United States Attorney's Office in Miami, Florida. Defendant Genao was presented a *Kastigar* letter and was informed that she was a target of an investigation. An FBI memorandum of the interview indicates that one of the two Government attorneys present declared the interview 'voluntary.' The FBI memorandum also states that in addition to the two United States Department of Justice prosecutors, two Federal Bureau of Investigation ("FBI") agents were present, along with a Spanish interpreter, and Mr. Fernandez. The next day, September 9, 2009, the same scenario was repeated with Mr. Fernandez purportedly representing Defendant De Oleo. The Government maintains that all communications between Defendants and the Government were translated into Spanish, although it appeared that Defendants understood English.

The Government further claims that, prior to taking any statements from Defendants, the Government advised each Defendant that their attendance at the interviews was completely voluntary, that they could end the interview at any time, they could leave the interview room at any time, that they did not have to answer any questions, and that they could stop and speak to their attorney, who was present during the entire interview, at any time. According to the Government, after being apprised of the nature of the interview, Defendants agreed to speak with the Government officials and acknowledged how that they wanted to do so. The Defendants were seated near the door to the conference room in which the interviews were conducted, and the door was unlocked.

It is Defendants' contention that at the time of these interviews, Mr. Fernandez was working

4

closely with Mr. Alfaro, who is the attorney for Mr. Rosario, the principal Government witness in this case. Defendants further assert that Mr. Fernandez advised Defendants to cooperate with the Government and enter guilty pleas in this matter.

### III. APPLICABLE LAW & ANALYSIS

Defendants claim that their statements should be suppressed because at the time they gave the statements, they were represented by an attorney laboring under a conflict of interest due to his dual representation of Defendants and Mr. Rosario. Defendants claim Mr. Fernandez was working closely with the attorney, Mr. Alfaro, representing the Government's principal witness in this matter. The Government argues that at the time Defendants gave their statements, they did not have a Sixth Amendment right to counsel, because the right to counsel attaches only after a defendant has been charged. Additionally, the Government argues that the Fifth Amendment right to counsel only attaches if an interview by law enforcement occurs while a defendant is in police custody. Because the Defendants were not in custody when they gave their statements (a month prior to their arrest), the Defendants had no Fifth Amendment right to counsel under *Miranda v. Arizona*, 384 U.S. 444 (1966). As Defendants' *Miranda* rights were not implicated, Defendants must demonstrate that the statements were not voluntary due to police coercion. No allegations of police coercion, nor evidence of such, has been presented by Defendants.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The "right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant . . . . by way of indictment, information, arraignment, or preliminary hearing." *United States v. Goveia*, 467 U.S. 180, 185, 187 (1984); *United States v. Sikora*, 635 F. 2d 1175, 1175 (6th

5

Cir. 1980) (Affirming the district court's denial of a motion to suppress, finding that defendant had initiated contact with the DEA, that defendant was not in custody and that adversary proceedings had not been commenced.).

The Sixth Circuit decision in *United States v. Moody*, 206 F. 3d 609, 615 (6th Cir. 2000) illustrates the Sixth Circuit's position on when the right to counsel attaches. In *Moody*, the Sixth Circuit reversed the district court's conclusion that the Sixth Amendment right to counsel applied. *Id.* at 612-614. Because the defendant had not been indicted at the time he gave his statements to the FBI agents, and the Supreme Court and the Sixth Circuit's earlier precedent established a bright line test as to when the right to counsel attaches, specifically "only after judicial proceedings have been initiated against a defendant[,]" the district court erred in concluding that the defendant had a Sixth Amendment right to counsel. *Id.*

The defendant in *Moody* had approached the FBI agents and offered to cooperate with their investigation of a drug conspiracy after two search warrants were executed on Mr. Moody's home and business. *Id.* at 611. During the interviews, the Government offered Mr. Moody a plea deal, specifically if he would enter a plea of guilty to conspiracy in connection with the one kilogram of cocaine seized during the searches conducted at his home and business, the Government would limit his exposure to a maximum of five years of imprisonment. *Id.* Mr. Moody hired an attorney, who contacted the Government and rejected the plea offer on Moody's behalf. *Id.* Prior to doing so, the retained counsel failed to review any FBI memoranda or reports regarding the substance of the interviews, nor did he inquire as to the nature of his client's admissions. *Id.* Mr. Moody was later indicted and convicted of conspiracy to distribute eighteen kilograms of cocaine. *Id.* Mr. Moody was sentenced to ten years of imprisonment, five years of supervised release and a special

assessment of $50.00. *Id.* at 612.

On post-conviction review, the district court concluded that Mr. Moody was denied the effective assistance of counsel due to counsel's failure to do any investigation into the nature of the interviews and Mr. Moody's incriminating statements before advising his client to reject the plea offer, which exposed his client to the substantially higher sentence. *Id.* The district court concluded that the appropriate remedy was to re-sentence Mr. Moody to the original five year plea offer. *Id.* The Sixth Circuit reversed, finding that the Sixth Amendment right to counsel had not attached because the Government had not instituted formal adversary proceedings at the time that Mr. Moody sought the advice of counsel. *Id.* at 615. While "logic, justice, and fundamental fairness favor the district court's position" the bright line test controls despite the fact that "it requires that [the court] disregard the cold reality that faces a suspect in pre-indictment plea negotiations." *Id*. Similarly, Defendants Genao and De Oleo were not indicted at the time they gave their statements to the Government. Therefore, they had no Sixth Amendment right to counsel and their arguments regarding counsel's ineffectiveness are without merit.

The cases cited by Defendants are inapposite to the present matter because in those cases the right to counsel had attached as formal adversary proceedings had been initiated. *See Wheat v. United States*, 486 U.S. 153, 159 (1988); *see also, Williams v. Jones*, 391 F. Supp. 2d 603, 610 (E.D. Mich. 2005). The fact that Defendants' counsel's performance probably fell beyond the wide range of reasonable professional assistance provides no basis upon which the Court can suppress Defendants' statements because they had no right to counsel.

Additionally, Defendants had no Fifth Amendment right to counsel because such a right only attaches during a "custodial interrogation.*" McNeil v. Wisconsin*, 501 U.S. 171, 182 n. 3 (1991).

7

"For an individual to be 'in custody,' there must be a formal arrest or restraint on freedom of movement of the degree associated with formal arrest. *United States v. Mahan*, 190 F. 3d 416, 421 (6th Cir. 1999) (citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). To determine if a person is in custody, the Court must first evaluate the circumstances surrounding the interrogation and second, given the circumstances, determine whether a reasonable person would have felt he or she was at liberty to terminate the interrogation and leave. *Thompson*, 516 U.S. at 112. In *California v. Beheler*, 463 U.S. 1121 (1983), the Supreme Court held that the defendant was not in custody because the defendant, who was not under arrest, voluntarily accompanied the police to the station house, talked for thirty minutes and then was permitted to leave. Similarly, in *United States v. Mahan*, the Sixth Circuit determined that there were no circumstances surrounding the interrogation that would lead a reasonable person to believe that he was under formal arrest or restrained in his freedom of movement because the investigating officer never brandished a firearm or handcuffs, the defendant was never told he could not leave the interview room, the door was unlocked and his chair was closest to the door. *Id.* at 421-22.

In *Mason v. Mitchell*, the Sixth Circuit held that a defendant was not in police custody when: (1) he was the sole suspect in the investigation; (2) he was transported by car to the police station for questioning, "precluding his ability to leave without the officers' permission and willingness to drive him home"; (3) he was questioned at the police station and "interrogated for four hours (in an increasingly hostile setting)"; (4) he was lied to by the officers regarding an eyewitness placing him at the crime scene; (5) he was repeatedly told he was not under arrest even though his parole officer stood ready to immediately arrest him as soon as the interrogation ended. 320 F. 3d 604, 631-32 (2003).

In this case, Defendants have failed to present any circumstances that would lead a reasonable person to believe that, if in the same situation as Defendants, he was not free to terminate the questioning. They went voluntarily to the Government's office, were told that they did not have to answer any questions, and they could leave whenever they wanted. To the extent Defendants argue that the agents' actions were coercive, such an argument is without merit. "To prove an unconstitutional confession, coercive police activity is a necessary predicate to finding that a confession is not voluntary." *United States v. Gatewood*, 230 F. 3d 186, 193 (6th Cir. 2000). To establish that Defendants' statements were coerced, the Court must find that: (1) the police activity was objectively coercive; (2) the coercion was sufficient to overbear the defendant's will; and (3) the police misconduct was the motivating factor in the defendant's decision to offer a statement. *See Mahan*, 90 F. 3d at 422. Defendants have failed to establish any actions on the part of the agents that even remotely suggest coercion to the extent that Defendants' wills were overborne rendering their statements involuntary.

While Defendants had no Sixth Amendment nor Fifth Amendment right to counsel, the Court cannot ignore the fact that it appears both Mr. Alfaro and Mr. Fernandez may have violated the American Bar Association's Rules of Professional Conduct (1983), as well as the Rules Regulating The Florida Bar. Florida Bar Regulation 4-1.7 states:

Rule 4-1.7. Conflict of Interest; Current Clients

(a) Representing Adverse Interests.–Except as provided in subdivision (b), a lawyer shall not represent a client if:

(1)    the representation of 1 client will be directly adverse to another client; or
(2)    there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

9

Fla. Bar Reg. 4-1.7. The notes to Regulation 4-1.7 further advise that "Loyalty and independent judgment are essential elements in the lawyer's relationship to a client." *Id.* Further, "[t]he potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than 1 co-defendant." *Id.* It appears that Mr. Alfaro may have breached the duty of loyalty to his clients by representing both of them, as well as, by his current representation of the Government's cooperating witness in this matter, who has been convicted of similar charges as those alleged in the present matter. Mr. Fernandez may also have violated the Rules Governing the Florida Bar. However, any allegations of a breach of counsel's professional conduct may be presented to the appropriate authority as set forth under rules governing the Florida bar membership. There are insufficient facts before this Court to make such a determination.

### IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant Genao's Motion to Suppress Pre-Indictment Statements [**Docket No. 104, filed on November 16, 2009**] is DENIED.

IT IS FURTHER ORDERED that Defendant De Oleo's Motion to Adopt Co-Defendant Genao's Request to Suppress Pre-Indictment Statement(s) [**Docket No. 108, filed on November 17, 2009**] is GRANTED.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: August 10, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record

on August 10, 2010, by electronic and/or ordinary mail.

                                                                  S/William F. Lewis
                                                                   Case Manager