UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JUAN DE OLEO (D-8) and
ROSA GENAO (D-9)

    Defendants.
_____/

Case No. 09-20221

HONORABLE DENISE PAGE HOOD

## ORDER DENYING JOINT MOTION FOR NEW TRIAL

**I.    BACKGROUND**

On August 27, 2010, after a trial was held, the jury returned a verdict of guilty of all counts against Defendants Juan De Oleo and Rosa Genao: Conspiracy to Commit Medicare Fraud, 18 U.S.C. § 1349 (Count 1); Health Care Fraud, 18 U.S.C. § 1347 and Aiding and Abetting, 18 U.S.C. § 2 (Counts 2-6); Money Laundering, 18 U.S.C. § 1957 (Counts 7 and 8-as to De Oleo only); and Destruction or Alteration of Records, 18 U.S.C. § 1519 and Aiding and Abetting, 18 U.S.C. § 2 (Count 9-as to Genao only). The jury returned a verdict of not guilty as to co-Defendant Deirdre Teagan as to Counts 1 through 6 but did not reach a verdict as to Count 12, Destruction or Alteration of Records, 18 U.S.C. § 1519 and Aiding and Abetting, 18 U.S.C. § 2.

A Joint Motion for New Trial was timely filed by De Oleo and Genao on September 10, 2010. The Government filed a response on September 17, 2010. De Oleo and Genao raise three issues in their motion: the Court erred in allowing prior bad acts evidence; insufficiency of the evidence; and, the Court's continuation of jury deliberations after significant concerns raised by the

jury members greatly prejudiced Defendants. It is noted that De Oleo and Genao did not submit a transcript of the trial at issue to support their arguments. The Court relies on its recollection of the trial and the documents filed in this case in its review of the Motion for New Trial.

## II.     ANALYSIS

### A.     Standard of Review

A motion for new trial under Rule 33 of the Federal Rules of Criminal Procedure must be filed within 14 days after a verdict has been rendered, if not based on newly discovered evidence. Fed. R. Crim. P. 33(b)(2). "[T]he trial court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Motions for new trial are not favored and should be granted with caution. *United States v. Willis,* 257 F.3d 636, 645 (6th Cir. 2011). Generally, a motion for new trial should only be granted "in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *United States v. Hughes,* 505 F.3d 578, 593 (6th Cir. 2007). The defendant bears the burden of proving that a new trial should be granted. *United States v. Davis,* 15 F.3d 526, 531 (6th Cir. 1994).

### B.     Prior Bad Acts under Rule 404(b)

The first issue raised by De Oleo and Genao is that the Court erred in admitting certain prior acts by De Oleo and Genao regarding their previous relationship with alleged co-conspirator Jose' Rosario and various clinics in Miami, Florida, which allegedly also engaged in Medicare fraud. De Oleo and Genao argue that the Government's overly abundant use of 404(b) evidence prejudiced the jury against De Oleo and Genao. They claim that the Court must find that the testimony by a cooperating witness regarding De Oleo and Genao's involvement in the clinics in Miami was more prejudicial than probative.

The Government responds that the Court did not err in holding that the evidence relating to the other infusion clinics was inextricably intertwined with the offenses at issue. The Government argues that the evidence was admissible under Rule 404(b) to establish De Oleo and Genao's knowledge of infusion fraud schemes, the motives of their business partners, their intent to defraud in connection with the scheme in Michigan and to show the common infusion fraud plan. The Government asserts that, at its request, the Court gave a limiting instruction cautioning the jury to only consider the evidence related to the other clinics for the limited purpose of assessing De Oleo and Genao's intent, knowledge and plan.

Rule 404(b) of the Rules of Evidence prohibits the admission of "other crimes, wrongs, or acts ... to prove the character of a person in order to show that he acted in conformity therewith." Fed. R. Evid. 404(b). However, this evidence may be admitted if it is for a specific proper purpose for which the evidence is being offered, such as to show motive, intent, plan, knowledge or absence of mistake or accident. Fed. R. Evid. 404(b). The Sixth Circuit has established a three-part test to determine the admissibility of evidence under Rule 404(b). *United States v. Mack,* 258 F.3d 548, 553 (6th Cir. 2001). First, the court must analyze whether there exists sufficient evidence to show that the other act or acts in fact occurred. *Id.* Second, any evidence of such other act may be admitted only for a proper purpose. *Id.* Finally, if the evidence may be admitted for a proper purpose, the court must determine whether the "other acts" evidence is more prejudicial than probative under Rule 403. *Id.*

In this case, the Court allowed testimony regarding De Oleo and Genao's actions related to infusion clinics in Miami. The Court found that the testimony regarding the infusion clinics in Miami was relevant and that such acts were offered to show motive, intent, plan, knowledge and

3

scheme as allowed under Fed. R. Evid. 404(b). The Government's evidence regarding the Miami infusion clinics established that the manner and means of the schemes were identical and the time period the clinics were in operation were almost identical. The Court gave a limiting instruction to the jury on this evidence, including language suggested by the defense. The Court found and continues to find that the admission of the evidence relating to the infusion clinics in Miami was more relevant than prejudicial as to the motive, intent, plan, knowledge and scheme of the fraud case at issue. It is noted that the Court did not allow certain records relating to the Lifetime and O&M clinics, finding such evidence was more prejudicial than probative. The Court's admission of the testimony regarding the infusion clinics in Miami was crafted so as not to overly prejudice De Oleo and Genao but sufficient to allow the Government to establish that De Oleo and Genao were participants in a larger fraudulent scheme in Michigan and in Miami. De Oleo and Genao's Motion for a New Trial based on improper 404(b) evidence is denied.

### C. Sufficiency of Evidence

De Oleo and Genao next argues that there was insufficient evidence to sustain their conviction. They argue that the Government's case consisted mainly of the prior bad acts noted above involving the Miami infusion clinics and their individual relationships with Rosario. De Oleo and Genao claim that the Government offered little substantial evidence regarding their actions as it relates to the clinic in Michigan, Xpress Center. They assert that De Oleo's only relationship to the Xpress Center was that he invested money into the clinic and that he received his investment money back. The only evidence connecting Genao to the Xpress Center is that she acted as the medical advisor.

The Government responds that they presented more than sufficient evidence to convict De

Oleo and Genao. The evidence presented included the testimony of three witnesses: Rosario, Ingrid Mazorra and Lill Vargas-Arias, who each had firsthand knowledge of the fraud and who each provided detailed testimony of De Oleo and Genao's participation of the fraud. In addition to these witnesses, the Government asserts it presented substantial documentary evidence that corroborated the witness testimony, including medical records from the clinic, bank records and flight records.

In reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *United States v. Hatfield,* 815 F.2d 1068, 1069 (6th Cir. 1987). "In examining claims of insufficient evidence, this court does not weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. Driver,* 535 F.3d 424, 428-29 (6th Cir. 2008).

Viewing the evidence presented at trial in the light most favorable to the Government, the Court finds that any rational trier of fact could have found De Oleo and Genao guilty of the crimes charged against them. There was testimony showing that De Oleo recruited Dulce Briceno, the clinic's manager, and that he spoke with Briceno on a daily basis. Testimony established that De Oleo funded the operations of the clinic, including giving Briceno $10,000 in cash. Witnesses testified that De Oleo gave instructions on how the patient files should be falsified and how he was paid from the clinic's funds. As to Genao, there was testimony on how she would sit at the kitchen table and falsify the files, including writing diagnoses and symptoms for patients she had not seen. Witnesses testified that Genao instructed that her handwritten notes should be destroyed. The Government also presented documents to establish the fraudulent scheme. De Oleo and Genao's

Motion for a New Trial based on insufficient evidence is denied.

### D. Jury's Inability to Come to a Unanimous Decision

De Oleo and Genao finally argue that during the six full days the jury deliberated, on each day, the jury sent a note asking the Court when a jury could be considered hung or deadlocked, requiring a mistrial. They claim that the juror notes grew increasingly frustrated and urgent in nature, culminating in a note detailing that deliberations had become confrontational, hostile and threatening. De Oleo and Genao assert that this resulted in numerous *Allen* charges being issued to the jury, ultimately implying to the jury members that if a decision was not made by August 27, 2010, the deliberations would proceed after a recess of over one week. De Oleo and Genao contend that the various instructions to the jury to continue their deliberations and reach a unanimous verdict were unduly prejudicial to the Defendants. De Oleo and Genao claim that the Court should have taken the initiative in declaring a mistrial and excusing the jury. They argue that the Court's failure to declare a mistrial placed the jury members in a helpless position and overborne their wills to concede to the majority's position.

The Government argues that the case was complex and involved three defendants, therefore, the fact that the jury had difficulty during its deliberations is not unusual. The Government claims that De Oleo and Genao's factual assertions regarding the jury notes were misstated. There were no jury notes regarding they were hung or deadlocked during "each day" of the deliberations. The notes regarding the jury being deadlocked and the notes regarding certain hostility occurred at the beginning of the jury's deliberations. The Government claims that the notes in the last two and a half days of the jury's deliberations were focused on the evidence, the instructions, and scheduling matters. The Government asserts that only one *Allen* charge was given. The Government states that

the Court never indicated to the jury that it would recess for a week if the jury did not reach a verdict on August 27th, although the Court and counsel discussed the matter of scheduling outside the presence of the jury.

The Court finds that this Court did not coerce the jury to reach a unanimous verdict of guilty. There was only one *Allen* charge given to the jury, contrary to the defense's argument that an *Allen* charge was given every day the jury deliberated. In *United States v. Reed,* 167 F.3d 984, 991 (6th Cir. 1999), the Sixth Circuit held that an *Allen* charge given on the twelfth day of deliberations, after the jury complained of a hostile atmosphere, was not coercive. The jury notes indicating the members were unable to agree on a verdict were sent on August 24 and 25, 2010. The note regarding the hostile and threatening atmosphere in the jury room was sent to the Court on August 25, 2010. The Court in each instance instructed the jury to continue to deliberate in good faith and to listen to each other. The Court also gave the instruction that the jury should not allow their will to be overborne. The jury's verdict found De Oleo and Genao guilty on all counts but acquitted co-Defendant Deirdre Teagan on six counts. The jury could not reach a verdict on the final count against Teagan. This verdict indicates that the jury thoroughly discussed the issues and evidence before it, indicating that none of the juror's will was "overborne." The jury began deliberating on Friday, August 20, 2010 and they continued to deliberate until August 27, 2010, despite the notes on August 23 and 25 indicating the members could not agree on a verdict and that the atmosphere was hostile in the jury room. The jury sent various notes requesting evidence and seeking further instructions. The Court finds that the continued deliberation by the jury from August 20 to August 27 did not unduly prejudice De Oleo and Genao. The Motion for New Trial based on the jury's continuing deliberation is denied.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that the Joint Motion for New Trial **(Doc. No. 203, filed September 10, 2010)** is DENIED.

                                                    s/Denise Page Hood  
                                                    Denise Page Hood  
                                                    UNITED STATES DISTRICT JUDGE

Dated: March 9, 2011

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 9, 2011, by electronic and/or ordinary mail.

                                                    s/LaShawn R. Saulsberry  
                                                    Relief Case Manager, (313) 234-5165